Is the appellant ready to proceed? Appellee ready to proceed? All right. Appellant, you may begin. Good morning, your honors, and may it please the court. Martin Stern, together with Eberhardt Garrison and Raymond Ward, will be making the appearance for all of the defendant's appellants. And I'd like to reserve five minutes, please, for rebuttal. Noted. Your honors, I'd like to begin, before getting into the particular issues under CAFA, by correcting a mistake that really overarches the entire appeal. The appellees begin and end their brief with the suggestion that there is a presumption, in this case, in favor of remand. And it's an understandable mistake, because they're taking that from a long line of cases, both from this circuit and others, which do, in fact, say that if the court's in doubt, it should remand in the run-of-the-mill case. But this is not the run-of-the-mill case. It's a case under CAFA. And in Dart, Cherokee, the United States Supreme Court, just last year, made clear that in view of Congress's clearly expressed desire that these types of cases proceed in federal court, that that presumption no longer stands. It said at page 554 of the opinion, and I'm paraphrasing, whether or not that presumption exists in run-of-the-mill cases, it actually used a different colloquialism I had to look up. Mine run cases. It went on to say, and I quote, no anti-removal presumption attends cases invoking CAFA. And when you keysight Dart, Cherokee, you find that the circuit courts of appeal that have discussed it have now begun to take this into account and have pointed out that there is no presumption in favor of remand under CAFA. The Ninth Circuit in particular has specifically said that all of its precedents to that effect no longer hold with respect to CAFA cases. So let's address the specific issues in this appeal. I'm going to address first the amount of controversy and then move on to the single event exclusion. Time permitting, I may talk very briefly about the local controversy exception and the home state exception. But if I run out of time, I'm comfortable relying upon the briefs for those. I think it's clear that the plaintiffs don't carry their burden under those exceptions. So to begin with the mountain controversy, the district court remanded solely on this basis. It recognized that the criteria for a mass action are otherwise present. That is, we have the claims for 100 or more plaintiffs. They seek a joint trial and they do so on the grounds that their claims involve common questions of law or fact. The court remanded, though, finding that the amount of controversy wasn't present. The amount of controversy for a mass action, like a class action, is $5 million in the aggregate. Once that's met, there's jurisdiction over the mass action. Now, it is true that the individual claims that comprise that mass action still must meet the $75,000 requisite. And if the plaintiffs identify any... Ms. Morgan didn't make a finding on the aggregate amount, right? She just, she made her ruling on the individual amount. That's correct, Your Honor. It's kind of... There's no Lowry dispute in this case. Everyone's agreeing one plaintiff is sufficient. As far as I can tell, her opinion begins that way. Was there an attorney argument in front of her on this issue? Was there any hearing at all? There was, and I don't remember specifically on this issue. But I think giving her the benefit of the doubt, what she was saying was she didn't find that any of the plaintiffs met the $75,000 requisite. So she said if none of them meet the $75,000 requisite, there can't be jurisdiction over a mass action. And I guess I'm in a big hurry to get to what evidence there is that leads you to conclude that a plaintiff, any single plaintiff, meets that $75,000. And Judge Graves, there is evidence, and I think it's also clear from the face of the pleadings, and I want to discuss both. So from the face of the pleadings, some of these plaintiffs claim very serious diseases, cancer and so on. Claim serious disease or claim risk of? No, claim serious diseases. Actually claim that they have cancer as a result of. In the face, on the face of the complaint? That's actually in the discovery. So you started out by facially. So facially, and I appreciate the correction. Facially, what we have are the allegations. I think there are allegations generally of cancer and other serious disease. There are certainly allegations of fear of cancer. Allegations as to cancer were only risk or fear of, but not an actual pled cancer, prostate, leukemia, anything. I thought that there were even allegations of cancer, but I think it becomes kind of a red herring because when we get to the evidence, there very clearly are specific claims for specific plaintiffs. If we were to look at it just facially, we would have to do some divisibility, right? In order to hypothesize about the 75,000, since the claim, the pleading was just collective. And what's, what case has ever done that sort of divisibility? Well, I think that what you would do is you, yes, you have to consider by divisibility. I think what you're saying and tell me if I'm wrong is that we're trying to get to a $5 million aggregate. We have 189 plaintiffs. I'm putting aside the $5 million entirely. I'm just looking for any one plaintiff at 75. If the pleading is collective entirely, which seemed to be her concern, the only way we could hypothesize about 75 would be if we establish some collective number and then divide it. Am I right? I think you could do it either way. I think you could either approach it that way from the collective number and go down to the individual, or you could go up from the individual to the collective number. And I mean, to talk, and I want to move on to the evidence, because I think it's makes, that makes it very plain that the amount of controversy is met. But before I do that, we have a track record in these cases. In the Lester versus ExxonMobil case, a remarkably similar case with plaintiffs making the same claims. And I'm not talking about cancer. I'm talking about the claims that all the plaintiffs have on the face of the pleadings. Those were the workers themselves, though, right? They were the workers, but they didn't, they weren't claiming disease. They were only claiming fear of cancer, increased risk of cancer, the mental anguish, basically, and punitive damages. And in that case, and I remember it painfully well, because I argued the appeal not once but twice, because we went to a three-judge panel in the Louisiana Court of Appeal. And then because it split, we went to a five-judge panel. That five-judge panel awarded damages to those eight plaintiffs, ranging from $100,000, a low, to $1.1 million, the high, and that included— That's your argument by analogy. We can, we can analogize this case to those and determine that the amount must be at least $75,000. Is that right? Exactly, Your Honor. Did you make that argument below? Yes, Your Honor, we did. Well, here's what I saw below. What I saw below is I saw a complaint where you may be able to convince me that facially I can read that complaint, determine what the amount of damages are. But Louisiana says they can't even plead amounts. And almost every one of them talks about fear and fright. And you have some experience trying these kinds of cases. I have some experience trying cases where people had fear and fright claims, where they left millions on the table, and the jury found that nobody had a claim that merited a dime. So fear and fright, every time I look at one, that's almost all I see. But what I see is a complaint that says what categorically damages are. This is what we're seeking. And then you had an opportunity to propound discovery. Is that right? That's correct, Your Honor. Were you limited in that other than the limit was in connection with the question of jurisdiction? Were there any other limits on that? No, there were not. Did you propound any request for production of documents? I don't think so, but I don't specifically recall that. You didn't ask to see anybody's medical bills? I don't believe so, Your Honor. Did you ask to see anybody's medical records? I believe what we asked for was the plaintiff's own allegations of what damages they had. And in response to that, we got, most importantly, a chart. And on the chart, the plaintiffs actually listed, plaintiff by plaintiff, what damages each of them were claiming. And they did so under a column that they entitled damages. We've reprinted some of that in our brief. But importantly, what I would point out, Your Honor, is that many of them specifically claim very serious disease. Here's what I think is important for me. Important for me is if we begin with the complaint, unless I accept that I can look facially at the complaint and make a determination everything goes over $75,000, what I'm looking at is a situation where all that happened as a result of the discovery, which the judge said you could have on the issue of jurisdiction, all that happened is they got some plaintiff-specific interrogatories and they filed responses where they put names next to the categories of damages. That's the only thing I see different from the complaint is they took all the categories and then they stuck some names next to them. So unless the complaint gets me to $75,000 on its face, I don't know how adding names to categories suddenly gets me to $75,000 as regards to any specific plaintiff. Help me with that. So two answers, Your Honor. First, as far as the face of the pleadings, this court has in the past not hesitated to find the requisite jurisdictional amount present from the face of the pleadings. An example of that, and I don't remember if this case is cited in our brief, is Luckett versus Delta Airlines, a case where the plaintiff checked her luggage on a flight. She put her heart medication in her suitcase and the luggage was lost. And so she ended up having congestive heart failure at her when she arrived and she was taken to a hospital and she was treated, not for that long. And there was a question whether it met the requisite amount. And what this court said is we don't have to look at beyond the complaint, beyond the allegations that she claimed that she had congestive heart failure as a result of the airline's negligence. I think the same works here. But if we have to move on to the evidence, the chart does more than just kind of a Russian roulette mixing names with allegations. It has very specific allegations. And I can't recite them verbatim, but I invite your honor to look at those discovery responses. Or you can look at the chart in our brief, which quotes them. And they are very specific. They allege things like seizures, birth defects, cancer, leukemia. And these are not just categories of damages that they are saying we want to fit under that category. This is an individual saying, I, so and so, claim that I have leukemia as a result of the exposure to naturally occurring radioactive material. Now, there is no way, I mean, your honor knows, there is no way that a cancer claim is worth less than $75,000. There is no way that a claim of seizures or birth defects is worth less than $75,000. Each of those claims is worth at least several hundred thousand dollars. But they only have to be, there are 30, at least 30 such serious claims. They can be worth much less than several hundred thousand dollars. I believe the number is just if you consider those 30 claims, if they were worth only $165,000 each, that would get you to the five million. That's disregarding that there are another 159 plaintiffs who claim other damages. It's also disregarding that these, all of these plaintiffs, completely separate from their personal injury claims, they have a claim for unjust enrichment. They claim under a theory of equity that they are entitled to share the Greffers, the Greffers are defendants in this case, who earlier won $56 million, that they're entitled to their share of that $56 million. 56 is what's now after the land remediation? $56 million is what they were awarded. They got 168 and then the plaintiffs only wanted what was after their land was? $56 million was the award. There was another punitive damage award. And the plaintiffs claim that to the extent that wasn't spent on remediation, it's theirs. Okay. I see that my time is quickly leaving and I want, I do want to talk for a moment about the single event exclusion. Why should we, if we end up agreeing with you on the amount in controversy and we were to reverse on that part, why isn't the better course to send these other issues you're about to get into, these exclusions and exceptions back to the district court? It just seems to me it's highly unusual for a court of appeals to make those determinations in the first instance, especially when the local event, it seems to require a good understanding of what the actual acts of negligence are. And it's just, I don't know that we have anything other than the petition in which to, to glean those from. Well, Your Honor, you certainly could do that. That would be one approach. But all of these were argued to the court below. And I would respectfully submit that it's so clear that none of these are met that in the interest of judicial economy, particularly CAF is directive to decide these issues quickly, that it would make more sense just to proceed and dispense with it. This, the single event exclusion, the reason it doesn't apply is because this court considered this exact issue in Rainbow Gun Club in just 2014. And what this court said, and it could not have been more clear at page 412 of the opinion. And I paraphrase in some, the text, the legislative history, other cases, all lead us to a single conclusion. And then at the end of that paragraph, a pattern of conduct can qualify under this exclusion, but only if it leads to a quote, single focused event. We don't have a single focused event here. What we have in the, in the complaint is an allegation. This is paragraph 18 of 34 years of pipe cleaning. We have an allegation in paragraphs 19 to 20 of long-term exposures. All right. Thank you, Mr. Stern. Thank you. Appellee. You may proceed. Hello, Your Honors. My name is Michael Laborde on behalf of the appellee plaintiffs. Essentially what this case is about is, is about the mountain controversy. The district court only reached the first issue of the mountain controversy, the $75,000 individual mountain controversy requirement. The district court went through the proper analysis. It examined the two areas that you need to examine when looking at a mountain controversy. It first examined whether it was facially apparent from the petition that the mountain controversy was met, and then it moved on to summary judgment type evidence. How does one of these eight people who are claiming cancer as a result of these contaminants, how is that not a $75,000 case for each of those eight people? I would direct the panel to other Fifth Circuit panel cases that have found that just a laundry list of damages, and then individualizing that laundry list is insufficient because you're making conclusory allegations based on the plaintiff's just saying these are our injuries. There's no affidavits. There's no medical bills. Can you direct us to those cases? Oh, okay. So this would be Perrette v. Westlake Finals Company. And if you want the site. No, if it's in the briefs, that's fine. Okay, yes, in the brief. In Bernyard where, and that's Bernyard v. Dow Chemical, where this court said simply to infer that the mountain controversy is met simply because the plaintiff has alleged a lengthy list of damages is insufficient. But those are focusing on allegations in a pleading, I take it? Yes, Your Honor. And here we have discovery responses saying that these eight people have cancer claims. You're basically saying we shouldn't, maybe that's not the case, we shouldn't believe what your plaintiffs are saying? Well, I just, we're contending that there's no distinction between the two. It's just an individualized list in the discovery evidence, whereas the, as the district court noted, it's just a generalized collective list in the petition. There really is no difference. But more importantly, the district court found that . . . In petitions or in a federal complaint, you usually have, I mean, you have these laundry lists, like we're entitled to everything under the sun because the lawyer's afraid maybe they're going to forget something and they're going to be in trouble down the road. So, I mean, you get, you know, we're entitled to equitable remedies and damages and punitives and attorney's fees and everything. I mean, here you have someone specifically saying what diseases they've contracted as a result of this environmental contamination. And you're saying we can't look at that? Well, it's not a summary judgment type evidence. That's what the district court found. That precatory issue is that in that second path that you take in which you evaluate whether or not the amount of controversies met, you need to consider summary judgment type evidence. And that was insufficient in the court's eyes to qualify as that. And more so, the district court found that just listing diseases and claims and assigning them to individual mass action members is insufficient because you're taking that list and then you're concluding just from that assertion that the amount of controversy is met. And that is not summary judgment type evidence. I didn't understand her ruling to say she couldn't look at those interrogatory answers. Is that your position?  That's in the court order to remand. She says that the discovery responses were not considered summary judgment type evidence. I believe it is the second to last page. What's the supporting authority for that? I thought in these jurisdictional amount determinations, a district court could look at anything in the record. Well, essentially, she directs in the order to remand, she looks at a case that talks about evaluating it on the basis of affidavits, medical bills. What's your authority that one can't look at any evidence in the record? Well, certainly you can evaluate any evidence of the record, but something that's not an affidavit or evidence is not summary judgment type. In making a CAFA jurisdictional amount determination, do you have any case that stands for the proposition that it's got to be in an affidavit form? No, Your Honor. There's no mandate that it has to be in an affidavit form, but that is what the district court directed this court's attention to, I guess. And maybe I just want to be clear because I'm not sure. Y'all are having a meeting of their minds. I may be wrong. You're not saying, are you, that she couldn't look at the interrogatory responses. I guess I heard you to say her determination was that those responses weren't sufficient summary judgment type evidence. Not that she couldn't look at them. She did look at them, and she determined it was insufficient as summary judgment type evidence. Oh, of course. Is that right? Yes, Your Honor. You're completely right. Sorry for that. It might. So you're saying she considered it, but she felt that it was as conclusory as the pleading itself? Essentially, yes. She makes that determination. She found that it was insufficient to establish the amount of controversy requirement. Because another key note that opposing counsel didn't go into is that there's a burden shifting that takes place in the initial notice of removal. All that the defendant has to do to establish the amount of controversy is just that it's a plausibly reliable allegation that the amount of controversy is met. And then at the point to where the plaintiff's file motion of remand, that burden is increased on the defendants that it's now by a preponderance of the evidence that they have to show. So it's that increased burden. She made the conclusion they didn't make a preponderance. We review this de novo. You aren't saying that we'd have to assess her for clear error in this determination, are you? No, Your Honor, but you would have to go by this preponderance standard in evaluating it after we filed the motion of remand. I thought in the Allen case, our court's Allen decision, it was similar in its focus on severity of injury and multiplicity of plaintiffs. With the list being not a laundry list, but Judge Smith called it a wide variety of harms. Yes, Your Honor. I think the claims are similar, but I don't think in that case he was evaluating it as far as any evidence. He was just evaluating it from the petition. Right, but that was found sufficient. A wide variety of harms as to multiple plaintiffs is sufficient. Yet you're saying here, laundry list, multiple, clarified to include leukemia, emphysema, wrongful death, not sufficient? Well, as the district court pointed out, we styled the petition in terms of a collective. So you could never know which plaintiff's met the 75. But then the interrogatory answers do individualize it. It does individualize it, but it's just assigning names to the laundry list. That's true, isn't it? I mean, it's verified discovery response. It is. It's a truthful assertion of what happened to these people. Yeah, it's a truthful assertion. It just seems like we're getting very technical here. And my understanding is it's a common sense inquiry from looking at what's in the record of what is the amount in controversy. So forget all these technicalities about it's a list, it's, and maybe they matter, maybe they don't. But just for the purposes of this question, forget that it's in a list. Let's say these are declarations, the perfect evidence to the way you want it, and you have a client who was exposed to this radioactive material and as a result got cancer, you're going to be asking that jury come trial for a whole lot more than $75,000. You're going to be asking them for millions of dollars, aren't you? Oh, yeah, we will. So why isn't that the answer here? But that does not mean the defendants carry their burden of establishing the amount in controversy. I thought we were supposed to use our experience with cases, with common sense, and looking at what the allegations are of injuries, assess what the likely amount is. Why am I wrong about that? Well, I would direct the court's attention to Parent v. Westlake and to Burn Yard where a different panel of this court decided that just making a list or just a variety of declarations that we have these claims or allegations, and then for the defendants to use that as definite proof that the amount in controversy is met is insufficient. In a case like this, how could a defendant then where it's collectively pled, how could a defendant . . . I mean, let's say you ever show that one individual among the hundreds meets the $75,000. I believe the district court gave the defendants 30 days. It may have been a little bit more, but any sort of deposition, any sort of discovery as far as medical bills, as far as income statements, as far as affidavits, they could have done a variety of things. Why is an affidavit better than an interrogatory response? I mean, in my mind, there's evidence. One's not better than another. Why do you think a declaration or an affidavit is better than an interrogatory response? Well, it would likely be more specific, and you could verify the individuality of that claim, and they could tell you how they . . . what the situation was surrounding the claim. But here we do have specificity, right? Plaintiff Jones, he claims he got prostate cancer, correct? Yes. Ms. Ashley claims she got what? Emphysema, and her husband died as a result of this? A couple of other things, I believe, yeah. So, just going back to the district court's analysis, whenever you . . . Well, the district court didn't make that analysis. Well, she engaged in the analysis of looking at that document, right? What? No, just the pleading, but she didn't go individual by individual. Did she address Mr. Jones' claim? Well, she looked at the discovery evidence. Whenever she moved to the next path of . . . Remind me, how is it that she determined the plaintiff Jones' claim wasn't in excess of $75,000? What was her assessment individualized as to him? Well, it wasn't individualized as to him. It was just saying that just because the discovery response is assigned cancer, emphysema to a specific person does not mean that it, one, qualifies as summary judgment type evidence, or two, is more than a conclusion based off of the discovery type evidence that doesn't meet a preponderance to meet the amount of controversy, and that was her analysis. We would urge this court to follow that analysis because the defendant has a burden to prove that the amount of controversy exists, and they did not do that. They had a month to take any deposition, any sort of clarity, any sort of medical bills, anything like that, and they simply failed to do so, and because of that, this case needs to return to state court where many cases like it have been proceeding, and because this is an inherently local matter. It's an inherently local case that affects local citizens of Louisiana, and it should be dealt accordingly in state court because of that. So that's where you get to the exclusion. Yes, that's where we get to the exclusion. Now, the exclusion is interesting just because of the burden on the exclusion. Now, there was a lot of briefing about this, and I don't think, well, I know it's never been addressed explicitly by this court or the Supreme Court, and it's been touched on a little bit by other courts in other states, and essentially, there is no conclusion as to who bears the burden of proof of showing that an exclusion applies or does not apply. So the one that we're talking about in this case is the local single event exclusion. Essentially, what it means is that the injuries occurred in the state of Louisiana, more than So the plaintiffs would say that the defendants bear the burden of proof because whenever you examine the statutory language, it specifically says under the mass action requirements that a mass action shall not include in the list four scenarios. And so plaintiffs would point the court to that and say that that is excluding these scenarios from the definition of mass action. So whenever you approach CAFA and you say, okay, there's a mass action under CAFA, those four scenarios are not included in that statement. And because of that, defendant must show that this is not one of those type of scenarios, that you do have CAFA jurisdiction because you are dealing with a mass action, because otherwise, it would just be the plaintiffs showing that there is jurisdiction, right? It would shift the burden. So plaintiffs would correctly assign that burden to the defendants. And if you examine the notice of removal, there's nothing about any of the exclusions. It's just about the exceptions. There's nothing about the local single event exclusion. And it's unaddressed. And plaintiffs contend that that is a precatory issue to establish jurisdiction under the Class Action Fairness Act, just like the 100 plaintiff minimum is, just like the minimal diversity is, just like the two amount and controversy requirements are, that defendant must make that precatory showing. And they failed to do so in the notice of removal. And they also failed to do so in their opposition to our motion to remand. And so I would actually direct the Court's attention back to the amount controversy requirement just because a defendant alleges that once they establish that one plaintiff attains the $75,000 amount and controversy requirement, then the burden actually shifts to the plaintiff to show which other plaintiffs don't meet that requirement. And then those plaintiffs can go back to state court and are released. We would contend that that is abundantly incorrect because that would be going against any traditional notion of removal in federal court. It is not the plaintiff's duty to show whether or not an individual plaintiff meets a specific amount and controversy requirement. It is the defendant's. There is no burden-shifting analysis in the amount and controversy. There is simply the defendant has a burden to prove that an individual plaintiff attains the $75,000 amount and controversy requirement. If they make this method of proof as to at least one plaintiff, then the action principally retains in federal court. But if . . . I've been focusing on the $75,000 because that's what the court below found wasn't met for a single plaintiff. Looking at the other amount and controversy requirement, which is the collective $5,000,000, tell me why, even from the face of the state court petition, that isn't met, when you have punitives and this trying to share this prior recovery, et cetera. Well, plaintiffs would contend that it would be reasonable to find it met. Just because of the collective nature of the petition . . . It would be. Yes. Yes, Your Honor. So your focus is on what the district court found, which is one plaintiff can't . . . You can't establish that one plaintiff is $75,000. Our focus is on the individualized plaintiffs, but even with the $5,000,000 requirement, the defendants have to make that showing, have to meet that burden of proof. So it's not just . . . Your time is running. I'm interested in hearing you complete your scenario where they meet, the defendants do meet their burden as regards the single plaintiff, which means the district court would retain jurisdiction over the action. What happens to the remaining plaintiffs? I think you were getting to saying what would happen in connection with those remaining plaintiffs and whether or not there was some requirement to establish that the $75,000 was met as regards to remaining plaintiffs. What happens then? That's the ridiculous setup of the Class Action Fairness Act. It divides a mass action or even just a mass action because there's no individualized amount of controversy requirement for class actions, but it essentially severs it. There is a scenario where let's say the defendants met their burden of proof as to one plaintiff, Mr. Joseph, and let's say that's all they did. Mr. Joseph stays in federal court. The rest go back to state court. That's what the plaintiffs contend because we don't have the burden of proof to show that they don't meet the $75,000 amount of controversy requirement. It is an affirmative proof on the defendants to do that. Based on what you're telling me, what they're asking us to do is make a determination about individual plaintiffs and then we got to pick at least . . . I say pick. We could conclude that as regards at least to one, the $75,000 is met. We could decide I guess two, three, four, five, but we need to be specific in our ruling if we make that determination. Then as regards all the other plaintiffs, they go back to state court. All the ones we don't identify and say the $75,000 is met. Is that right? Is that what happened? That's our argument and that's essentially the implication of how the Class Action Fairness Act is set up. The difference between our position and defendants is that they contend that there's a shifting in that burden. Once you find that Mr. Joseph meets it, then it's on . . . You say that's . . . one, do you have any case for that proposition and two, are you saying that that's a mechanism that would occur in this court or are you saying if you lost as to any individual, it would be an argument you would make back before Judge Morgan? I would say that we would, of course, make that argument if it is remanded for further discovery on the other plaintiffs, but . . . You haven't made that argument to us. If you lose as to one, this court should be deciding as to others. The record establishes that they don't. Well, I think that in the briefs, we outlined the fact that CAFA in its text says that the You can complete your response to that question. If the text of CAFA essentially says, and it's right in CAFA and it's right in our briefs, that the federal court only maintains jurisdiction over those plaintiffs that meet the individualized amount of controversy requirement of $75,000, and so for all those that don't, they need to be remanded back to state court. Now, the real question is, whose burden is it to prove that? And so essentially, we contend that it's their burden because to do the opposite would go against any notion of federal removal or jurisdiction. We thank you for your time. Same two questions I just asked you. Besides saying it's in the text, what case do you have for that proposition? And the second question was, even if you're right, wouldn't that be an argument you'd be making in the first instance to the district court? Let's see. I know it's in our brief. If it's in your brief, that's fine. Yeah. We point out the case in the brief where that's how . . . It's fine. If it's in the brief, I'll find it. Yeah. Is it the Eleventh Circuit case? I think it is. That's okay. I think we did make it at the district court level because that's the mechanism that Class Action Fairness Act . . . Didn't have to rule on it because you won on the threshold question. She . . . at the end of her analysis, she says, because we decided to remand it because of the individualized requirement, we're not going to address minimal diversity. We're not going to address the aggregate amount. She didn't address anything. So we did make that argument, and that's what would happen as a mechanism of the text of Catholic. So because of all this . . . Your time has expired. Thank you very much. Rebuttal? Your Honors, this suggestion that we have to prove $5 million by looking plaintiff by plaintiff is simply wrong. The $5 million amount in controversy requirement is a requirement both for class actions and mass actions. It's the same requirement. In a class action, all you have is a proposed . . . I don't think that was his argument. I think he's saying that you met your $5 million aggregate, but you would still have to particularize as to each individual. Well, if that's the argument, it's also simply wrong. The only requirement, the only jurisdictional amount requirement for jurisdiction over a mass action is $5 million, period, end of story. Now, it's also true that if there are individual plaintiffs who don't meet $75,000, they're not subject to the court's jurisdiction. So how do you say that should work? I think Lowry makes clear that it's up to the plaintiff to identify any. We didn't hear the plaintiff identify a single plaintiff here. Instead, what I hear is this suggestion that . . . Let me ask you this. When a court says summary judgment type evidence, I guess in any other kind of case, the summary judgment motion gets filed, you can meet that by filing an affidavit. In a med mal case, you may have the affidavit of an expert who says, this isn't what led to the plaintiff's injury or this was standard practice within this field of medicine, that kind of thing. You would meet it with an affidavit. Or you could have a deposition which countered the claims made by the plaintiffs. You take depositions, offer up those depositions. Or somebody says they have medical expenses in the amount of $100,000 and you ask for all your medical bills and the only one they produce is $10,000. I guess my only question is, you had an opportunity to do any sum or all of that as a result of this order for discovery on the question of jurisdiction. For whatever reason, it was determined not to do any of that. Your Honor, it's clear that discovery responses are summary judgment type evidence. That's always been clear. Oh, I'm not saying they're not. I'm just saying when it says summary judgment type evidence, you're not limited to just discovery. We're not limited. We could have done more. To interrogatories. We could have done more, but there was no reason to do more. We have responses, sworn responses from individual plaintiffs. And frankly, to be fair, part of the problem is likely this. Because of this CAFA requirement, you have a situation where in order to have a case in a federal court under CAFA jurisdiction, you put the defendant in the has to say their claims are certainly worth more than $75,000. Except when the defendant gets to trial, I doubt any defendant is going to stand up and say their claims are certainly worth more. For the person who has emphysema, there may be some evidence that they smoked a pack a day for 40 years. So they may have emphysema, which may be totally unrelated or at least arguably is unrelated to the norm. So all of that. So what you're asking the defendant to do is to prove up the plaintiff's damages. And what you're asking a plaintiff to do is to argue that no matter what the evidence is, we're never going to have anything over $75,000. And that is, it's a tough position for both sides to be in. Judge Graves, you're exactly right. And the Berniard case that counsel opposite cites recognizes this. And what it says is, it's not the burden on the removing party to show what the plaintiff is going to win or even that he's going to recover all the damages that he's asked for. Rather, the burden on the removing party is only to show what the plaintiffs seek. And this is the amount and controversy. And this can be shown through discovery responses. And these discovery responses that I just heard opposing counsel try to walk away from a little bit, they could not be more specific. Let me just give you an example. Evelyn Anderson claims cancer, loss of hair, skin rash, breathing problems, miscarriage, allergies, swollen glands, headaches, dizziness, seizures, numbness, muscle and joint aches from exposure to radiation. She's not just picking categories. These are very specific claims. In fact, I don't think they're repeated as to any other plaintiff. Now, how does this plaintiff not have several hundred thousand dollars at a minimum in controversy? And the same is true for at least— No recordings are being made, you recognize. Your Honor, we've already lost— You're now arguing that her case is worth at least a hundred thousand. This doesn't mean that we're liable whatsoever. But the amount in controversy is at least, for these 30 plaintiffs, several hundred thousand dollars. And that's just 30 plaintiffs. There are 159 more plaintiffs. There's just no way the amount in controversy isn't satisfied. If I can just say one last thing, I cited the— You may, but it needs to be the last thing. It will be the last thing. I cited what I like about Berniard. They cited what they liked about Berniard. What they don't say is that Berniard was a class action. It wasn't a mass action. So there were no individual plaintiffs before the court. What the defendants did was they relied on census data, guessing as to who would be in a class. Then they extrapolated what those claims might be worth. That's what the court was criticizing. We don't have that problem. We have individual plaintiff by plaintiff allegations. Unless your Honors have any more questions. All right. None. Judge Higginson has just reminded me to thank you for agreeing to extend the time and to allow for oral argument in this case. It's a little, and I'm sure you know it, it's a little bit unusual that we would have oral argument, but it's a very important issue. It's a very important case. We take it very seriously, and so we do appreciate your agreement to do that in this case. We're going to take this matter under advisement and render a ruling in five minutes or in due course. Thank you all very much. Thank you.